Norman A. Stiller, J.
This is an application, pursuant to section 618 of the Insurance Law, for permission to bring an action on behalf of Roberta McKay, an infant, against MVAIC. Testimony was had before this court without a jury, establishing facts as follows:
On October 10, 1965 about 3:00 p.m., the infant, then age 17, was crossing Jefferson Avenue from east to west on the northerly crosswalk of Dodge Street, when she was struck by an automobile proceeding in a northerly direction on Jefferson Avenue. The car proceeded a short distance with the infant on the hood. and came to a stop about 10 feet from the east curb and some distance north of the intersection. The driver helped the infant into the rear seat of the car and then went back to pick up her shoe from the pavement.
*778 A football game was in progress across the street so that police were in the vicinity in considerable numbers. Officer Burke was the first to arrive and his testimony was as follows:
“A. * * * When I got np there, there was a car maybe I’d say about 10 feet from the curb, north of Dodge Street, and this young lady was sitting in the back of the car and the man said to me that this girl is hurt and he is taking her to the hospital. I believe he said that she hurt her leg and he’s taking her to the hospital. And, I asked the young lady if she had hurt her leg and she said yes. I didn’t ask how. So, I just said well, okay, she’s going to the hospital. And, at that time Pientka pulled up.
* ‘ Q. Who is he ? A. He is a motorcycle man, and he was on his motorcycle. So, I told him that this girl is hurt and this fellow is taking her to the hospital. I said would you give them an escort over to the hospital? So, naturally Deaconess was the closest one at that point, where he went. Well, I was under the impression that this girl knew this gentleman.
“ Q. It was your impression that she knew the driver of the vehicle? A. That was my impression at the time. ”
Officer Pientka gave this account:
“ Q. * * * The question is whether or not you asked the driver if he had struck the girl or if some person had told you? A. Yes, I remember that now. It was just in the process of getting into the ear when I asked him that.
“ Q. You asked the driver if he had hit the girl? A. Yes.
“ Q. Correct?
* * *
‘1 Q. And he had replied to you that he did strike her; is that it? A. Yes.
* * *
“ Q. Did there come a time when there was some talk about taking this girl to the hospital? A. Yes.
“ Q. Was there any question in your mind that she had been hit at that point by the car? A. No, there wasn’t any doubt in my mind then.
* * *
“ Q. At the scene of the accident did you talk to the driver further then or ask him for any identification ? A. No, I didn’t. ’ ’
Then Pientka jotted down the license number of the car en route to the hospital under circumstances as follows:
“ Q. This was while you were on the way to the hospital? A. Yes. I did tell him. I said you’ll have to report this to Number 6, and he said “ that’s the one up on Main Street near Utica, isn’t it? ” And I said yes, it is.
*779 “ Q. Now, was it that fact, coupled with the fact that he had knowledge of Buffalo and it was an out-of-State vehicle, that led you to jot down the license number? A. Yes.
“ Q. And, you say you did that on a hunch? A. Yes.
“ Q. A hunch that what ? A. Well, to me it just didn’t sit right, you know, for a California driver to be familiar with
* * *
“ Q. All right, Officer Pientka. Was it strictly on the basis that the vehicle had an out-of-State California plate that you took down the number ? A. That would be the reason, actually. It seemed to me that a fellow from California who would be so familiar as to where a particular precinct number would be, so that gave me the idea that he may be very familiar with Buffalo and driving somebody else’s car, perhaps a visitor’s car in Buffalo. ’ ’
However, Officer Pientka lost the notation and cannot remember it. Officer Pientka turned back as they approached the hospital. The driver took the infant into the hospital, sat her down and left her there without identifying himself to the infant or the hospital authorities, nor did he report to No. 6 Station as instructed by the police officer. The identity of the driver or owner cannot now be ascertained.
Officer Burke did not secure identity of driver because he did not realize that the car struck the infant, despite the fact that the car was stopped there about 10 feet from the curb. Officer Pientka testified that he did not seek identification because Officer Burke was on the scene first and the Police Department rules provide that the officer on the scene first shall do the investigating. Therefore he took it for granted that Burke had made an investigation.
The only question before the court is whether under these circumstances a hit-run accident has occurred within the meaning of section 618 of the Insurance Law. If hit and run were to be defined as the ordinary concept of the average citizen then this happenstance certainly would not qualify. However, cases on this subject clearly indicate that the meaning is broader under the section. In Matter of Casanova v. MVAIC (36 Misc 2d 489) the driver stopped, picked up the injured person, saw a policeman and told him of the accident (this in controversy) and took the injured to the hospital and then promptly disappeared without identifying himself, leaving his name or reporting. The court there did not seem to consider that there was any serious question of a hit run accident but considered the matter of reporting within 24 hours as the crux of the problem *780 and decided that Casanova was entitled to press claim against MVAIC.
In a recent Court of Appeals case, to wit; Matter of Riemenschneider v. MVAIC, decided November 29, 1967 (20 N V 2d 547) the court treated with an accident in which the driver stopped and was available for identification but injured failed to take identification because he did not know he was hurt. The court there decided the term ‘1 hit and run driver ’ ’ encompasses situations where the operator is unidentified and has left the scene of the accident because there was then no reason to identify him as well as an operator who actually prevents identification by leaving the scene. The court (p. 550) there held in favor of the applicant, with an opinion reading in part as follows: “ And it seems the purpose of the .statute broadly to afford protection in any situation where a vehicle leaves the scene of accident without identity. ”
The girl, McKay, was injured, she was concerned about her injury, the driver gave no indication that he was going to avoid identifying himself or would fail to report to police. Furthermore, the infant testified before this court. It was apparent that she was immature beyond her years; she is retiring and she was excited at time of accident. Furthermore she did not know that Officer Burke had not obtained identification of the driver, for she testified she could not hear the words between the driver and Officer Burke. It was not unreasonable for her to expect that driver would remain with her until she had ascertained the extent of her injuries.
A fair inference drawn from the facts herein is that the driver never intended to report the accident unless compelled to; and that he misled Burke into thinking that the girl was with him and that she was not hit by his car.
He knew he was to report at No. 6 station and avoided reporting and then he vanished when he reached the hospital and no longer had any police to stop him. This court feels he was guilty of hit and run to the same extent as if he had not stopped at all.
As to the jotting down of the license number by Officer Pientka, this does not equate a report by driver to police. This was not a report at all. The driver did not necessarily know that the officer was taking his number and further the officer was not there to take a report and was not there to investigate since that was the prerogative of the first officer on the scene, to wit, Officer Burke.
The petition herein is granted.